[Civ. No. 14406. First Dist., Div. One. Feb. 27, 1951.]

CITY OF OAKLAND, Appellant, v. ANNIE H. DARBEE et al., Respondents.

W. Reginald Jones, Port Attorney, and Edward A. Goggin, Assistant Port Attorney, for Appellant.

Edwin Sprague Pillsbury and Erskine, Pillsbury & Tulley for Respondents.

WOOD (Fred B.), J.—Plaintiff city of Oakland appeals from an order transferring an eminent domain proceeding for trial (as to defendants Annie H. and Andrew L. Darbee) from Alameda County to Contra Costa County.

The proceeding was filed in the Superior Court of Alameda County to condemn for airport purposes six contiguous parcels of land situate in that county. Each parcel is severally owned by one defendant or a group of defendants, none of whom has any right, title or interest in any of the other parcels. Respondents own one of these parcels and at all times involved have been residents of the city and county of San Francisco. Some of the other defendants, owners of other parcels, reside in Alameda County.

On July 11, 1949, respondents filed (1) a notice of motion for an order directing separation of the proceeding against them from the proceeding against all other defendants, and (2) a notice of motion for an order transferring the proceeding, as to them, to a superior court in and for a county other than Alameda County and other than the city and county of San Francisco, a motion based upon section 394 of the Code of Civil Procedure.

Each motion was heard on December 2, 1949, and granted by minute order entered that day.

The appeal is solely from the order of transfer. ■ An appeal does not lie from the order of separation. (See Code Civ. Proc., §§ 936, 956, and 963.)

Appellant claims the order of transfer erroneous because (1) some of the other defendants reside in Alameda County, the county in which the proceeding was brought and (2)

respondents did not in support of their motion make a showing "as to what county is neutral, i. e., as to what county there is in which none of the defendants resides or is doing business."

We do not find the order erroneous. █ The applicable statute (Code Civ. Proc., § 394) does not make respondents' right of transfer dependent upon the residence of other defendants, owners of other parcels, nor does it require respondents to select the county or to make a showing concerning a county other than the county of their residence or the county in which appellant city is situated.

The statute declares that *"Whenever an action or proceeding is brought by a* county, city and county, or *city, against a resident of another county, city and county, or city,* or a corporation doing business in the latter, *the* action or *proceeding must be, on motion of either party, transferred for trial to a county,* or city and county, other than the plaintiff, if the plaintiff is a county, or city and county, and *other than that in which the plaintiff is situated,* if the plaintiff is a city, *and other than that in which the defendant resides,* or is doing business, or is situated." (Emphasis added.) █ It applies, of course, to an action brought in a nonneutral county, not to an action brought in a neutral county. (See *City of Stockton* v. *Wilson,* 79 Cal.App. 422, 424 [249 P. 835].)

The mandate of this statute applies precisely to the facts of this case, insofar as appellant and respondents are concerned. The proceeding was brought by the city of Oakland, a city situated in Alameda County, against the Darbees, residents of the city and county of San Francisco, which is "another county, city and county, or city" than the plaintiff city or the county in which the plaintiff city is situated. Upon motion of either party (respondents made the motion) the *"proceeding must be . . . transferred for trial* to a county . . . other than that in which the plaintiff is situated . . . and other than that in which the defendant resides . . . ." (Emphasis added.) █ Upon respondents' motion, in compliance with the mandate of the statute, the superior court transferred the proceeding for trial to Contra Costa County, a county other than that of respondents' residence and other than that in which appellant city is situated. Here are the facts which bring the mandate of the statute into play and demonstrate that the court below fully and properly carried out that mandate.

Appellant would read into the statute a number of additional elements (requirements and exceptions) which we do not find expressed in or necessarily implied from its provisions.

Appellant says that the policy of this statute is to protect a nonresident defendant in an eminent domain proceeding from the niggardly verdict which tax-conscious jurymen might award him, more niggardly than one they might award a fellow county man. This tax-conscious feature, says appellant, is not present here because the Board of Port Commissioners, the agency through which the city of Oakland is here operating, does not have the power of taxation. Therefore, appellant would have us conclude, the reason for literally applying the provisions of the statute is wanting in this case, especially when there are defendants residing in Alameda County and their right to have the action against them tried by a jury summoned from the vicinage is valuable and ancient.

The fallacy of this argument stems from the fact that the statute is not narrowly limited to condemnation proceedings. It applies to any action or proceeding brought by a city against a nonresident, upon whatsoever kind of claim the city might have against him, including a claim that bears no relation to the taxing power, one that would have no tendency to arouse the prejudices of tax-conscious jurymen.

The purpose of the statute is that of protecting either party from local bias. (*City of Stockton* v. *Ellingwood*, 78 Cal.App. 117, 121 [248 P. 272].) It gives either party the option of removal to a neutral county. Besides, though the Board of Port Commissioners may lack the taxing power, the parent body, plaintiff city, has and may exercise that power.

Next, appellant represents that because the statute uses the singular, instead of the plural, in defining the rights of nonresident defendants to transfer, it is limited to cases in which a city brings an action against a single defendant, or, an action in which none of the defendants is a resident of the county in which the action is brought; hence, is inapplicable here, there being several defendants, some of them residents of Alameda County.

We derive no such legislative intent from the statute. It says: ''Whenever an action or proceeding is brought *by a* . . . *city, against a resident* of another county, city and county, or city, . . . the . . . proceeding must be, on motion of *either party*, transferred for trial to a county . . . other than that in which the *plaintiff* is situated, if the plaintiff is

*a city,* and other than that in which the *defendant* resides
. . ." (Emphasis added.) The use of the singular (de-
fendant, resident, plaintiff, city) was well calculated to accord
each such party the right to demand and obtain a transfer
under the indicated circumstances, regardless of the number
of other parties (plaintiff or defendant) in the action or pro-
ceeding. Had the Legislature said "against residents of
another county" instead of "against a resident of another
county," there would be a possible inference that the Legis-
lature intended to grant the right of transfer only in a case
in which *all of the defendants* were "residents of another
county, or of other counties." Interestingly enough, we
observe that this statute once read in the plural: "against
citizens of another county" (Stats. 1891, p. 56); "against
residents of another county" (Stats. 1907, p. 700); amended
in 1915 to "a resident of another county" (Stats. 1915, p.
721). The subsequent legislative change to the singular lends
added emphasis to the view which we have expressed.

██ Decisions relied upon by appellant in support of its
contention that the order should be reversed because some of
the other defendants reside in Alameda County, are inappli-
cable. Those decisions construe and apply section 395 of
the code, which, unlike section 394, declares that the county
in which the defendants "or some of them" reside at the
commencement of the action is the proper county for the trial
of the action. They also involve section 396b which provides
for transfer when a proceeding is commenced in a court having
jurisdiction of the subject-matter but which is *not* the court
designated as the "proper" court for the trial,—quite dif-
ferent from the instant proceeding, commenced in the court
of the county where the lands to be taken are situated (as
required by Code Civ. Proc., § 1243), hence in the "proper"
court. That county happens to be the county in which the
plaintiff city is situate, and respondents reside in another
county. That brought the mandate of section 394 into play
when invoked by respondents.

Another point urged by appellant is predicated upon the
fact that respondents, in support of their motion for a trans-
fer, tendered no evidence that there was a county in which
no defendant corporation was doing business and in which
none of the other individual defendants resided, to which
the proceeding might be transferred; particularly, no evi-
dence that Contra Costa was such a county. In this con-
nection appellant directs attention to the fact that Bank of

America National Trust and Savings Association, a national banking association, was one of the parties defendant at the time of the filing of the complaint; that one of appellant's affidavits in opposition to the motion for a transfer showed that shortly prior to the filing of the complaint a preliminary report issued by a title company indicated that certain of the parcels of land described in the complaint were vested in the bank, and that appellant joined the bank as one of the defendants in its original complaint filed herein. This falls short of evidence that the bank, upon the filing of the complaint or at any time thereafter (only the amended, not the original, complaint is in the record on this appeal) had any interest in any of the land described in the complaint. The amended complaint, at most, alleges that the "defendants are the owners or claim some interest in and to" those lands, and the affidavits of both parties to this appeal show that none of the other defendants, individual or corporate, had any interest in the land owned by respondents. In addition, there is not one scintilla of evidence in the record herein that any of the defendants resided or was doing business in Contra Costa County.

Yet, upon this slender basis for suggesting that the Bank of America was a real party in interest in the proceeding, appellant builds the argument that the bank presumably was doing business in every county in the state, including Contra Costa, a presumption which, appellant says, it was the duty of respondents to rebut, if they could, by evidence adducible at the hearing of their motion for transfer.

██ This argument is unsound for several reasons. We find nothing in the statute which imposed a duty upon respondents, as the moving parties, to show more than (1) that the proceeding was brought in the county in which plaintiff city was situate, and (2) that respondents lived in another county, identifying that county (in this case, San Francisco) ; no duty to negative other counties by proving what other counties were counties of the residence of other individual defendants or of the places of business of corporate defendants.*

██ ▪ Upon the showing which respondents did make herein, it became the duty of the trial judge to select a county and transfer the proceeding to that county. This he did. In the

---

*In contrast, see the somewhat detailed specification of procedural requirements of Code Civ. Proc., § 398, in respect to a transfer to a "proper" court.

record before us, which was the record before him, there is nothing whatsoever to indicate that Contra Costa was not an available county, even if for the moment we assume the validity of appellant's contention that if a corporate defendant were doing business in that county, then the Contra Costa court was not an available recipient of the transfer. For there is no evidence in the record that any defendant resided or was doing business in Contra Costa County.

That the Bank of America probably was doing business in Contra Costa County is but speculation and surmise, not a judicially cognizable fact. The activities of a private corporation, like those of a natural person, are not among the facts of which courts take judicial notice, as listed in section 1875 of the Code of Civil Procedure. Moreover, the Corporations Code specifies what is "evidence" or "prima facie evidence" of the formation (§ 313), of the by-laws and proceedings (§ 832), of revivor after suspension of powers upon nonpayment of taxes (§§ 5705 and 5902), of merger or consolidation (§ 4115), of authority for disposition of assets (§ 3904), and of the sale of shares of stock (§ 2711) of corporations. As to foreign corporations, sections 6600 and 6602 of that code specify what is "evidence" of their existence and powers, and declare that the courts shall take judicial notice of the Constitution and statutes, and of the official acts (affecting corporations) of the legislative, executive and judicial departments of the state or place of incorporation. We do not derive from such statutes any suggestion of a legislative intent that the courts take judicial notice of the fact, if it be a fact, that Bank of America was doing business in Contra Costa County. We find nothing in the federal statute under which national banking associations are incorporated (12 U.S. Code, §§ 21-200) that indicates an intent upon the part of Congress to require the courts, state or federal, to take judicial notice of the business activities of any such association.

There is implicit in appellant's argument the view that if the record showed that the Bank of America was doing business in every county in this state (or, in every county except Alameda) there would be no county to which the court could transfer the proceeding in response to respondents' motion. That would not necessarily follow. It might mean merely that the bank could not invoke the statute (and that the plaintiff city could not do so, if its

motion were predicated upon the bank's places of business), simply because there would be no county, or other county, in which the bank was not doing business. The bank's inability to invoke the statute should not destroy or impair the right which the statute gives the respondents.

If it did appear that Bank of America was doing business in every county except Alameda and San Francisco, and, further, that the bank moved for transfer under section 394 at the same time as did the respondents herein, separation of the proceeding as to the bank or the respondents or both would be indispensable to their respective rights of transfer under section 394. The Legislature has anticipated such situations by the provisions it has made for separation. "An action may be severed and actions may be consolidated, in the discretion of the court, whenever it can be done without prejudice to a substantial right" (Code Civ. Proc., § 1048). "Action" as therein used includes a special proceeding. (*City of Los Angeles* v. *City of Huntington Park,* 32 Cal. App.2d 253, 269-70 [89 P.2d 702], an eminent domain proceeding.) This statute is supplemented by the special and not inconsistent provision that all parcels of land lying within a county and required for the same public use may be included by a condemner in the same or separate proceedings "but the court may consolidate or separate them to suit the convenience of the parties" (Code Civ. Proc., § 1244, subd. 5). A separation was made by the court below, with the result that its order of transfer to Contra Costa County pertained only to respondents herein and the parcel of land owned by them, leaving the proceeding in Alameda County in respect to all other parcels and all other defendants.

But, says appellant, that order of separation was void, upon the theory that from and after respondents' filing of a motion for a change of venue the Alameda court had no jurisdiction to perform any judicial act in the proceeding until it decided that motion. We find no such provision in section 394. The decision which appellant cites (*Beard* v. *Superior Court,* 39 Cal.App.2d 284 [102 P.2d 1087]) in support of this point construed and applied a quite different change of venue statute (Code Civ. Proc., §§ 395 and 396b), one which applies to the case in which an action is not commenced in the "proper" county and a nonresident defendant moves for transfer to the county of his residence. In such a case, section 396b requires the defend-

ant to file his notice of motion for transfer "at the time he answers or demurs," judicially interpreted as requiring that the motion be decided upon the basis of conditions existing in the case at that time. That provision of section 396b also operates to suspend the power of the court (from the filing of notice of motion until the filing of the court's order deciding the motion) to perform any other act of a substantive nature in the case, save for those excepted acts which are specified in the provisos of section 396b or in other applicable statutes.

In the Beard case, the superior court, pending the motion for change of venue, made an order for support, attorney's fees and costs pendente lite (in an action brought under section 196a of the Civil Code), an order which was void because not within the scope of the exceptions then allowed by the provisos of section 396b. In each of the cases cited in the Beard case the situation was similar, an order made pending a similar motion for change of venue: an order passing upon a demurrer to the complaint (*Nolan* v. *McDuffie* [1899], 125 Cal. 334, 336 [58 P. 4]); an order awarding alimony, made during the period prior to mention of any exception in the predecessor statute, section 396 (*Hennessy* v. *Nicol* [1894], 105 Cal. 138, 142 [38 P. 649]); refusal of appellate court to compel the superior court to make an order for counsel fees and costs, prior to the listing of any exceptions (*Walsh* v. *Superior Court* [1919], 44 Cal.App. 31, 32 [185 P. 998]); and an order overruling defendant's demurrer to the complaint during the pendency of its motion for transfer (*Pickwick Stages System* v. *Superior Court* [1934], 138 Cal. App. 448, 449 [32 P.2d 433]). The reason for the suspension of such powers of the court is that if a defendant is entitled to have his motion for change of venue granted, he is entitled to have such matters heard before the court of the county of his residence; also, in respect to the pleadings, the motion for transfer must be decided upon the basis of their status as of the date of the filing of notice of the motion.

That reasoning does not logically require suspension of the court's power to act upon matters which are incidental or ancillary to consideration of and action upon the motion for transfer itself. Nor does it apply with full force to a motion for transfer based upon section 394, notice of which need not be filed when defendant first appears (*Daneri* v. *City of San Diego*, 55 Cal.App. 562 [203 P. 829], and *Mono*

*Power Co.* v. *Los Angeles*, 33 Cal.App. 675 [166 P. 387]), a motion which, as in the instant case, was noticed and heard in a proceeding which was commenced and pending in a "proper" court.

Respondents' motion for separation bore a very definite relation to their motion for transfer. It was noticed and heard at the same time as the motion for transfer. The notice said the motion would be "based upon the ground of convenience of the parties," the records and papers on file, and a certain affidavit. The affidavit, among other things, said that respondents had filed or were about to file "pursuant to the provisions of Section 394 of the Code of Civil Procedure, a motion for an order transferring the above proceeding, as to them, to a county other than Alameda or the City and County of San Francisco," and that "It is not known whether any or all of the other defendants intend to, or will, make a similar motion [for transfer]."

The decision of the superior court upon both of respondents' motions was embodied in a single minute order. The clause thereof which granted the separation immediately preceded the clause that ordered the transfer. Thus, it is clear that the two motions and orders were intimately related, one to the other, and were so regarded by the superior court. Its consideration of the proposal for separation was based principally, if not wholly, upon that relation, incidental to and in aid of the demand for transfer, a desire to satisfy that rightful demand of respondents with the least of inconvenience to other parties.

Yet, appellant, while vigorously urging the invalidity of the order of separation in aid of its attack upon the order for transfer, asserts that the order of separation is not reviewable upon this appeal because it is not an appealable order. Anomalous, indeed, would it be if the order for transfer depended upon the order of separation for its validity and the validity of the latter could not be considered and determined until there is an appeal from a final judgment entered after a trial upon the merits. Appellant, of course, cannot confer jurisdiction upon this court by urging the invalidity of the separation order, but the very insistency of its urge tends to demonstrate that the two orders are closely related and that the separation order is a nonappealable "intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the" order of transfer,

an intermediate order which this court may review "Upon an appeal" from the order of transfer as provided in section 956 of the Code of Civil Procedure if "judgment" as used in that section includes an appealable order as well as the final judgment in the action. The section states what a court may review "Upon an appeal from a judgment." It does not say "final judgment in an action," nor "a judgment that finally determines all the issues presented by the pleadings." The reasonable intendment of the Legislature was to declare the scope of review upon an appeal in a civil action or proceeding, an appeal from any appealable decision, whether the decision takes the form, nominally, of a judgment or an order. That review includes any nonappealable "intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the" appealable decision under consideration by the reviewing court.

We have not found a decision discussing this precise point. But there are two Supreme Court decisions, and one appellate, that apply the principle without mention of section 956. Upon an appeal from a special order made after final judgment, an intermediate nonappealable order may be reviewed. In *Lane* v. *Pacific Greyhound Lines,* 30 Cal.2d 914 [187 P.2d 9], the propriety of an order granting relief from default in moving to tax costs after judgment became final was deemed reviewable upon appeal from the later and final order taxing costs. In *Miller* v. *Miller,* 26 Cal. 2d 119 [156 P.2d 931], upon appeal from an order vacating a final decree of divorce, two antecedent (intermediate) orders denying motions for continuance of the motion to vacate were reviewed. In *Hayes* v. *Pierce,* 18 Cal.App.2d 531 [64 P.2d 728], an order setting aside a default and the judgment entered thereon, conditioned upon defendant's paying plaintiff's costs in a specified amount, was reviewed upon appeal from the final order unconditionally setting aside the default and judgment, a final order made after defendant had tendered payment of those costs.

 The statutory basis for these rulings appears to be the provisions of section 956 which we have quoted. We consider that those provisions apply with equal force to an appealable order made prior to final judgment on the merits, and to any nonappealable order or ruling intermediate thereto "which involves the merits or necessarily affects" the appealable order.

We conclude that the order granting respondents' motion

for separation is reviewable upon this appeal; and that the trial court had jurisdiction to consider that motion, and committed no error in granting it.

The order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.